# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,
   Plaintiff,

v.                 Case No. 14-CV-978

JEAN P. GILES,
   Defendant.

## DECISION AND ORDER

The United States of America brought suit against Jean Giles, alleging that she owes the U.S. Department of Education (DOE) more than $55,000 plus interest because of a student loan that she received in 1996 but never repaid. The government moves for summary judgment. In a prior order, I noted some potential evidentiary issues with the materials that the government initially filed in support of its motion and gave it an opportunity to submit additional materials. The government has done so, and the parties have submitted briefs addressing the admissibility of those materials. I will now consider the government's motion on the merits.

## I. BACKGROUND

Giles started college in 1978 and paid for her education in part by taking out student loans. After graduating, she returned to school part-time to pursue a master's degree. She made all required payments on her student loan debt until 1995 when, through an attorney, she filed a petition for relief under Chapter 7 of the Bankruptcy Code. In Schedule F of her petition (listing creditors holding unsecured nonpriority claims), she listed $30,488 owed to "Great Lakes Higher Ed." for student loans. ECF No. 47-3, at 2. The bankruptcy court issued a discharge order on August 2, 1995, and

1

Giles never again made a voluntary payment toward her student loan debt. The parties dispute whether Giles's student loans were discharged.

After her bankruptcy case ended, Giles started getting phone calls from Sallie Mae, a financial services company specializing in student loans, demanding payment on her student loan debt. She did not understand why Sallie Mae was calling given that her loans were with Great Lakes and she thought they had been discharged. She told Sallie Mae that the debt had been discharged and demanded that the calls stop. They didn't. Giles was told that if she signed an application for a consolidation loan, the calls would stop. She signed in December 1995, and the calls stopped.

Giles's consolidation loan (for $33,178.87 at 7% interest annually) was disbursed by Sallie Mae on May 9, 1996. The loan was guaranteed by the Texas Guaranteed Student Loan Corporation and reinsured by DOE under the Federal Family Education Loan Program (FFELP), part of Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1071 to 1087-4.

Giles defaulted on October 18, 2005. The loan holder filed a claim on the loan guarantee, the guarantor paid the claim in the amount of $55,566.73, and the entire amount paid became due to the guarantor as principal. *See* 34 C.F.R. § 682.410(b)(4). The guarantor collected a total of $6,049 while it held the debt but was unable to collect the full amount due. On October 9, 2009, the guarantor assigned its right and title to the loan to DOE.

On June 26, 2014, DOE referred the matter to the U.S. Attorney's Office, which brought this suit. According to the government, Giles owes outstanding principal in the amount of $55,026.07 plus interest accruing at a rate of $10.55 per day.

2

## II. DISCUSSION

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding the government's motion, I resolve all factual disputes and make all reasonable factual inferences in favor of Giles, the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483–84 (7th Cir. 2008).

### A. Evidentiary Issues

Before proceeding to the merits, I will address the parties' evidentiary issues. Originally, the government relied on a certificate of indebtedness executed by a DOE loan analyst and two declarations by Christian Odom, a DOE senior loan analyst, to establish numerous material facts, such as when Giles defaulted on her student loan obligation, when the original holder of the loan filed a claim seeking reimbursement from the loan guarantor, and when the guarantor assigned its right and title to the loan to DOE. Giles argued that these materials were not based on personal knowledge and that they contained inadmissible hearsay.

I expressed concern about these materials because, as submitted, I could not determine whether they were admissible. They appeared to be based on DOE records, many of which the government did not provide. I also noted that the government had not sufficiently demonstrated that the records were admissible under the so-called business records exception to the general evidentiary prohibition on hearsay. Fed. R. Evid.

3

803(6). I gave the government an opportunity to properly support its motion with admissible evidence. I find that it has done so.

The government submitted additional DOE records with a supplemental declaration from Odom, which shows that the records properly fall within the business records exception. Federal Rule of Evidence 803 states that the following are not excluded by the rule against hearsay:

> (6) *Records of a Regularly Conducted Activity.* A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Odom declares, under penalty of perjury, that the relevant DOE records submitted by the government were made at or near the time of the act or event described by or from information transmitted by someone with knowledge, they were kept in the course of DOE's regularly conducted student loan activity, and that making such records was (and is) a regular practice of that activity. His declaration also demonstrates that he is a competent custodian of these records, he is familiar with DOE processes for creating and maintaining such records, and he has sufficient knowledge of and familiarity with these records to describe their contents. Giles does not show that there is any reason to doubt their trustworthiness.

Even to the extent that the DOE records are based on or include the records of the lender or guarantor, they are admissible, under the circumstances. "A document prepared by a third party may qualify as another business entity's business record under Rule 803(6) if that entity integrated the third-party record into its records and relied upon it in its day-to-day operations." *BP Amoco Chemical Co. v. Flint Hills Resources*, 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010) (citing *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342–44 (Fed. Cir. 1999); *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990)). Odom's declaration clearly shows that DOE integrates records from lenders and guarantors into its records—including promissory notes, disbursement records, and servicing records—and that DOE relies on these records in its day-to-day operations. In fact, federal regulations require DOE to obtain lender and guarantor records and maintain them for FFELP loans assigned to DOE unless the Secretary of DOE says otherwise. *See* 34 C.F.R. § 682.409.

The party offering business records prepared by a third party must also show that they satisfy the other requirements of Rule 803(6). *See Flint Hills*, 697 F. Supp. 2d at 1021. Odom declares that he is familiar with the creation and maintenance of lender and guarantor records; that they are made at or near the time of the events described by or from information transmitted by individuals with knowledge; that they are kept in the course of the regularly conducted student loans activities of lenders, guarantors, and DOE; and that making these records is a regular practice of that activity. In fact, lenders and guarantors are required to make and maintain such records, *see* 34 C.F.R.

5

§ 682.414, and are subject to annual independent financial and compliance audits, *see, e.g.*, 20 U.S.C. § 1078(b)(1)(U); 34 C.F.R. §§ 682.305(c), 410(b). I find that Odom has personal knowledge (acquired through his work at DOE) of how lenders, guarantors, and DOE created and maintain the records material to this case, that the records offered by the government are admissible business records, and that the trustworthiness of these records is not disputed.

Giles argues that Odom's declaration is not based on personal knowledge because he only started working for DOE a few years ago and never worked for the lender or guarantor in this case. The Seventh Circuit recently addressed a similar situation in *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680 (7th Cir. 2015). In *Cocroft*, mortgage borrowers defending a foreclosure action objected on summary judgment to the affidavit and deposition testimony of Lanisa Jenkins, a vice president at Bank of America, the original mortgage lender's successor-in-interest. *Id.* at 684–85. The district court overruled the objection, finding that Jenkins had sufficient personal knowledge of the bank's business records, including those of the original lender, as a competent custodian. *Id.* at 685. The Seventh Circuit agreed, noting that Jenkins "provided sufficient indicia of the[] reliability" of the records and that the borrowers "point[ed] to no evidence suggesting that any of the business records at issue were inaccurate, or somehow unreliable." *Id.* at 686. The court further said, "When it comes to testifying about business records, 'the custodian need not be the individual who personally gather[ed] . . . a business record. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be

familiar with the company's recordkeeping practices.'" *Id.* (quoting *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir.2006)).

Giles raises virtually the same objections to Odom's declaration that the Cocrofts raised, and they fail for the same reasons. Odom has personal knowledge to support his declaration based on his familiarity with DOE records, he has provided sufficient indicia of their reliability, and Giles has done nothing to suggest that any of the records at issue are inaccurate or unreliable.

### B. The Government's Prima Facie Case

The parties agree that to recover on a defaulted student loan, the government must first make a prima facie showing that (1) the defendant signed a promissory note for a student loan, (2) the government is the current holder of that note, and (3) the note is in default. *E.g.*, *United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *United States v. Tartt*, 12-cv-1416, 2013 WL 2151543, at *3 (N.D. Ill. May 16, 2013). The burden then shifts to the defendant to show that she either does not owe the debt or does not owe the amount the government claims. *E.g.*, *Petroff-Kline*, 557 F.3d at 290.

The government has established a prima facie case. First, the government has provided the promissory note at issue, ECF No. 42-3, which Giles admits to signing, Giles Decl., ECF No. 47-2, ¶ 7. Second, the government has shown that it is the current holder of that note, which was assigned to the guarantor and then to DOE. *See* Odom Second Supp. Decl., ECF No. 58, ¶ 14. Finally, Giles signed the note years ago and admits that she has never made a voluntary payment on it, Giles Decl., ECF No. 47-2, ¶ 5, so the note is clearly in default. *See* ECF No. 42-3, at 2 (defining "default" within the

7

promissory note itself to include "the failure of the borrower to make an installment payment when due, or to meet other terms of the promissory note under circumstances where the Secretary [of DOE] or guarantor finds it reasonable to conclude that the borrower no longer intends to honor the obligation to repay"); *see also* 34 C.F.R. § 682.200(b) (defining "default" in substantially similar terms).

The government has shown that the outstanding principal owed on the loan is $55,026.07 and that interest is accruing at a rate of $10.55 per day, totaling $29,027.61 as of April 14, 2016. Giles argues that the government has not credited about $7,000 worth of tax return intercepts to her outstanding balance, but the record clearly shows otherwise. Per Giles's own documents, her loan guarantor received $5,606 from federal tax return intercepts in 2008, *see* ECF No. 47-6, at 2–3, which is consistent with DOE records indicating the amount that the guarantor was able to collect from Giles while it held the loan, *see* ECF No. 58-5, at 4. Giles also provided a 1098-E statement of student loan interest paid, which shows that Giles paid $1,395 in student loan interest in 2012. *See* ECF No. 47-6, at 1. This payment is also clearly reflected in DOE records. ECF No. 58-5, at 9. Giles does not otherwise dispute the amount owed. Therefore, there is no genuine dispute of material fact concerning the amount owed.

### C. Giles's Defenses

Giles raises several common law defenses to the government's claim, arguing that the promissory note is void and that the government should be barred from attempting to collect on it. To the extent that such defenses are available in this case, the parties agree that Wisconsin law provides them.

### 1. Misrepresentation

Giles argues that she can avoid her student loan obligation because she was induced to sign the promissory note by a misrepresentation of fact. Giles states that she signed the note because a Sallie Mae representative told her that it was only an application, she did not understand what it was for, and she would not have signed it had she known that she was binding herself to a new loan obligation. Under Wisconsin law, a contract is voidable if a party's assent was induced by a material or fraudulent misrepresentation of fact on which that party justifiably relied. *Bank of Sun Prairie v. Esser*, 456 N.W.2d 585, 588 (Wis. 1990); *First Nat'l Bank & Trust Co. v. Notte*, 293 N.W.2d 530, 538 (Wis. 1980); Restatement (Second) of Contracts § 164(1) (1981).

Even assuming Giles relied on a material or fraudulent misrepresentation by a Sallie Mae representative, she cannot show that her reliance was justified. "Negligent reliance is not justifiable." *Esser*, 456 N.W.2d at 589 (citing *Ins. Co. of N. Am. v. Univ. Mortg. Corp. of Wis.*, 262 N.W.2d 92, 95–96 (Wis. 1978); *Ritchie v. Clappier*, 326 N.W.2d 131, 134 (Wis. Ct. App. 1982)). "Generally, a person is negligent if he or she signs a contract without ascertaining its contents and is not prevented from doing so, even if induced to sign by . . . misrepresentations." *Ritchie*, 326 N.W.2d at 134 (citing *Bostwick v. Mutual Life Ins. Co.*, 89 N.W. 538, 541 (Wis. 1903)). In determining whether reliance was negligent in a given case, Wisconsin courts also consider other factors, such as the party's intelligence and experience. *See id.*

When Giles signed the note, she was well-educated, she had signed for and received many prior student loans, and the promissory note was short and clear in its terms. The note clearly states,

9

> By means of this application, I am applying to have my loans consolidated . . . . If Sallie Mae accepts this application, it is my understanding Sallie Mae will advance funds on my behalf to creditors . . . . The funds so advanced by Sallie Mae will be disbursed to the holder(s) of the loans designated . . . in order to pay off those loans. <u>I further understand that the amount of my SMART LOAN will equal the sum of the amounts which my creditors verify are the pay-off balances on the selected loans.</u> . . .
> . . . .
> I . . . promise to pay to [Sallie Mae] . . . such loan amount as is advanced on my behalf, to pay daily simple interest on the unpaid principal balance thereof at the rate described . . . . <u>I understand that the amount of my loan will be based on the pay-off balances of loans selected for consolidation as provided by the creditors of such loans and may exceed my estimate of such pay-off balances.</u> My signature below certifies that I have read, understood, and agreed to the conditions and authorizations stated . . . .
> . . . .
> I certify that the above information is true and correct. I have read the material and understand my rights and responsibilities under the loan consolidation program.

ECF No. 57-1. Under the circumstances, no reasonable jury could find that Giles was justified in believing that the note was a mere application.

**2. Duress**

Giles next argues that she can avoid her student loan obligation because she signed the note under duress. She states that, after her bankruptcy case ended, Sallie Mae's representatives started calling her almost every day, were rude to her, and refused to stop calling when she demanded that they do so. She argues that the stress caused by these phone calls and her fear that they would continue combined with stress caused by other personal, family, and financial issues she was facing at the time to "influence[]" her to sign the note. *See* Def.'s Br., ECF No. 47, at 16. This is not enough to show duress.

To show duress, Giles must demonstrate that she was induced to sign the note by wrongful acts or threats that deprived her of the exercise of her free will. *Putnam v.*

10

*Time Warner Cable of Se. Wis.*, 649 N.W.2d 626, 635 (Wis. 2002) (citation omitted) (citing *Wurtz v. Fleischman*, 293 N.W.2d 155, 160 (1980)); *Galusha v. Sherman*, 81 N.W. 495, 500 (Wis. 1900); *Pope v. Ziegler*, 377 N.W.2d 201, 203 (Wis. Ct. App. 1985) (citing *Wurtz*, 293 N.W.2d at 158). Even assuming Sallie Mae's conduct was wrongful, Giles must show that it left her with no reasonable alternatives but to sign the note. Restatement (Second) of Contracts § 175 cmt. b. Giles had reasonable alternatives. If she believed her loans had been discharged, she could have sought relief in the bankruptcy court. She could have sought counsel from her attorney. She also could have simply tolerated or ignored the calls, *id.* ("Where the threat is one of minor vexation only, toleration of the inconvenience involved may be a reasonable alternative."), which she did successfully for some period of time before signing the note. Even assuming that everything that Giles says is true, a reasonable jury could not find that she signed the note under duress.

**3. Laches**

Giles next argues that the government's claim is barred by the equitable doctrine of laches, which prohibits a party from asserting a claim after an unreasonable and prejudicial delay. This defense fails for several reasons. First, subject to certain limited exceptions not relevant here, laches is not an available defense against the United States. *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *Silverman v. CFTC*, 549 F.2d 28, 34 (7th Cir. 1977).

Second, courts have consistently found that Congress eliminated laches as a defense to suits to collect on defaulted federally insured student loans when it passed the Higher Education Technical Amendments of 1991. *See, e.g.*, *United States v. Tuerk*,

11

317 Fed. App'x 251, 253 (3d Cir. 2009); *United States v. Lawrence*, 276 F.3d 193, 196 (5th Cir. 2001). The provision, as relevant to this case, states, "[N]o limitation shall terminate the period within which suit may be filed . . . by . . . the Secretary [of DOE] . . . for the repayment of the amount due from a borrower on a[n FFELP] loan . . . that has been assigned to the Secretary." 20 U.S.C. § 1091a(a)(2)(D).

Finally, even if laches did apply here, Giles has not shown that she was materially prejudiced by the government's delay in bringing suit. She argues that she destroyed her pre-bankruptcy payment records, which prejudices her defense that her loans were discharged in bankruptcy, but the record suggests that Great Lakes still has records of her loans dating back to 1981, *see* ECF Nos. 52-2 (summarizing Giles's student loan account with Great Lakes), and Giles does not argue that she has made any effort to get these records and failed. She also has not shown that her bankruptcy defense is a valid one, as discussed below. At worst, Giles was "lulled and then rudely awakened," which "is not the kind of harm, if it is a harm at all . . . , that allows laches to be used to deprive a plaintiff of his rights." *United States v. Admin. Enterprises, Inc.*, 46 F.3d 670, 673 (7th Cir. 1995).

### 4. Lack of Consideration

Finally, Giles argues that the promissory note is void for lack of consideration because the loans that she consolidated were discharged in bankruptcy, and therefore, she received no benefit by consolidating them. Under Wisconsin law, "[t]he party seeking to avoid a contract has the burden of proving failure of consideration," *NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 97 (Wis. Ct. App. 1994) (citing *Jax v. Jax*, 243 N.W.2d 831, 839 (Wis. 1976)), and consideration is presumed for promissory notes, *Eli*

12

*Environmental Contractors, Inc. v. 435 Partners, LLC*, 731 N.W.2d 354, 358 (Wis. Ct. App. 2007) (citing *Jax*, 243 N.W.2d at 839; *Sucher v. Biller (In re Schoenkerman's Estate)*, 294 N.W. 810, 812 (Wis. 1940)).

Giles cannot carry her burden here. First, Giles has not shown that her student loans were discharged in 1995. At the time, a Chapter 7 discharge did not discharge a debtor from any debt owed on a federally insured student loan unless the loan had been in repayment for at least 7 years. *See* 11 U.S.C. § 523(8)(A) (1994); *see also, e.g.*, *Moody v. ECMC, Inc. (In re Moody)*, 202 B.R. 720 (Bankr. S.D. Ohio 1996). Student loan debts are presumed to be non-dischargeable, so a debtor seeking discharge of such debts must obtain a determination of dischargeability. *See In re Roberson*, 999 F.2d 1132, 1134 (7th Cir. 1993); *see also Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). Based on the documents Giles provides from her bankruptcy case, she received a general discharge with no specific determination as to the dischargeability of her student loans.

Second, Giles has not shown that the consolidation loan would lack consideration even if her student loans were discharged. Under Wisconsin law, consistent with relevant authorities, even if Giles had merely promised post-bankruptcy to repay her student loan debts to Great Lakes, her moral obligation to do so would have been sufficient consideration to make the promise enforceable. *See Sucher*, 294 N.W. at 811; *Odell v. Smith (In re Smith's Estate)*, 277 N.W. 141, 143 (Wis. 1938); *Elbinger v. Capitol & Teutonia Co.*, 242 N.W. 568, 569 (1932); Restatement (Second) of Contracts § 83; 4 Williston on Contracts § 8:21 (4th ed.), Westlaw (database updated May 2015). Given this, Giles has failed to show how her agreement to repay Sallie Mae

13

with interest for paying off her student loan debts to Great Lakes could be void for failure of consideration.

### III. CONCLUSION

For the foregoing reasons, the government is entitled to judgment as a matter of law. **IT IS ORDERED** that the government's motion for summary judgment (ECF No. 41) is **GRANTED**. Judgment shall be entered in favor of the government and against Giles in the principal sum of $55,026.07 and interest of $29,027.61 as of April 14, 2016; additional interest accruing thereafter and to the date of judgment at the annual rate of 7%; and additional interest accruing at the legal rate from the date of the entry of judgment until the indebtedness is paid in full.

Dated at Milwaukee, Wisconsin, this 10th day of February, 2017.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge